I. Addison and the Tampa Mattress Factory, Incorporated, *Appellants*, v. L. H. Hooks, *Appellee.*

Division B.

Opinion Filed February 25, 1926.

338

*J. T. Watson* and *O. P. Hilburn,* for Appellants;

*Whitaker Brothers,* for Appellee.

WHITFIELD, P. J.—The bill of complaint herein alleges that I. Addison is "and has been engaged for a long period of time in the operation of a mattress factory in the City of Tampa, Florida, and has in the conduct of said business for a number of years last past, had the use of and operated the same under both the name of 'Florida Mattress Factory' and the name of 'Tampa Mattress Factory,' the name of 'Florida Mattress Factory' having been originally employed and appropriated by complainant and made use of; the name of 'Tampa Mattress Factory' having been originally employed, appropriated and made use of by another; that during or about the latter part of the year 1923, or the early part of the year 1924, complainant purchased the entire plant, business, good will and name of the original user of the name 'Tampa Mattress Factory,' a mattress factory business, being then operated by such

original user under such name; that since the purchase of the name of 'Tampa Mattress Factory,' and the business etc., thereof, as aforesaid, he has continuously used said name, and done business thereunder, and in so far as complainant knows, or has any information to the contrary, such use by him of the name 'Tampa Mattress Factory' has been exclusive up until the time that the defendant in this suit, as hereinafter to be stated, appropriated such name, and began to do business thereunder, and complainant alleges that one of the principal considerations actuating him in purchasing the same, Tampa Mattress Factory aforesaid, was to secure the name, and in order that he might have the right to the exclusive and continued use thereof; that since the purchase of the said Tampa Mattress Factory as aforesaid, he has continued to operate and do business as a mattress factory in the city of Tampa under both names, to-wit, 'Florida Mattress Factory,' and 'Tampa Mattress Factory,' and has supplied customers upon orders received by the Tampa Mattress Factory, as well as upon orders received by the Florida Mattress Factory, and has used the name 'Tampa Mattress Factory' upon parts of his stationery in order to make known the fact that he was claiming the right to such name, and was doing business under such name; and to have the benefit of such name in distinguishing his goods, wares, merchandise, or other products from those of other mattress factories doing business under different names; that a considerable part of his business is carried on now under the name, 'Tampa Mattress Factory,' and to many of his customers his business is known only under such name; that under such name, together with the name 'Florida Mattress Factory,' he has built up a thriving business, trade and good will, and that he relies upon both the name 'Tampa Mattress Factory' and 'Florida Mattress Fac-

tory' for distinguishing the products of the labor of his factory; that the defendant L. H. Hook, has within the last few months, the exact date thereof being unknown, commenced the operation of a mattress factory for the manufacture, repair and sale of mattresses in competition with your orator and other mattress factories situated in the City of Tampa, and is doing business and operating under the name and style of 'Tampa Mattress Factory,' exactly the same name that complainant has been using as aforesaid, and claims the right to continue in such use; and because of the use of such name by the said defendant he has and is unfairly competing with complainant and many of his former customers have been misled, and are being misled by the use of such name by the defendant; that because of the use of such name by the said defendant, the latter has also received mail from the Post Office addressed under said name that was intended for complainant, and that the use of the name by the defendant is contunuing to result in great loss to complainant in the business, trade, and operations that have been and are being carried on by your complainant under the name of 'Tampa Mattress Factory,; and complainant has and is suffering irreparable loss as a consequence thereof; and complainant represents that he has requested the said defendant to discontinue his use of such name, and the doing of business thereunder, but notwithstanding such request the said defendant refuses to discontinue the same, but threatens to and is continuing in the use thereof, and is doing business now under the name aforesaid in conflict with and in disregard of complainant's right thereto, and with a fraudulent intent; and in so doing is unfairly competing with complainant in his business being operated under the same name; that on the 6th day of October, 1924, he caused the name 'Tampa Mattress Factory' to be regis-

tered in the office of the Secretary of State of the State of Florida, as a trade mark, to be used in the manufacture, sale and distribution of mattresses; that complainant has obtained the issuance of Letters Patent by the Governor of the State of Florida to do business as a corporation under the name 'Tampa Mattress Factory,' and has perfected the organization of a corporation to do business as mattress manufacturers under such name; that he is desirous of assigning to said corporation all of the right, title, interest and claim which he has in and to the said name 'Tampa Mattress Factory,' as the same has been acquired by the purchase and use thereof as heretofore described, as well as the registration in the office of the Secretary of State as heretofore alleged; and complainant alleges that the continued use of the said name 'Tampa Mattress Factory' and doing business thereunder by the defendant herein as aforesaid, is in violation of complainant's rights to pass the said name to the said corporation, and for use under a corporate organization, and would be in violation of the rights of the said corporation in and to said name, as such right should and ought to pass to such corporation under a transfer of said name from complainant, and that the said use by the said Hook of said name would be unlawful and unfair competition as regards the rights of the said corporation in the premises thereunder; that the past, present and continued use of the said name by the said defendant, both with respect to complainant and the said Tampa Mattress Factory, incorporated, is unlawful and constitutes a fraud upon the people, and especially upon those intending to deal with complainant, or the said Tampa Mattress Factory, incorporated, and constitutes an unfair competition by and upon the part of the said defendant, and is in violation of complainant's statutory rights acquired, heretofore described, and that unless the said de-

fendant is required to discontinue the use of said name that complainant will suffer irreparable loss.''

The prayer is ''that the said defendant may be enjoined by the temporary and permanent restraining order of this court, his agents, attorneys, and all other persons acting by or for him, from the use of the name of 'Tampa Mattress Factory' in designating, or describing, in the City of Tampa, a mattress factory business, or in conjunction with a mattress factory business now being operated as hereinbefore alleged; that said injunction order may issue temporarily and pending this suit as soon as may be after proper notice, and upon the final hearing of this cause that the same may be made permanent,'' and for general relief.

A demurrer was filed upon grounds that the bill of complaint is without equity, that no facts are alleged entitling the complainant to the relief sought, and that ''The words 'Tampa Mattress Factory' are not such words as are subject to exclusive use or appropriation by any person or corporation.''

The following decree was rendered: ''This cause coming on for hearing under the demurrer interposed by the defendant to the bill of complaint, and upon being argued by counsel, and after consideration by the court, it is ordered that said demurrer be and the same hereby is sustained; and the complainants giving notice that they did not desire to amend their bill, it is further adjudged, ordered and decreed that under the said demurrer the bill of complaint be and the same hereby is held insufficient, and the prayers thereof be and the same hereby are denied, and the suit instituted by the said bill be and the same hereby is dismissed, and final decree be and the same hereby is entered in the cause in favor of the defendant and as against the said complainants.''

Complainants appealed. A trade name may be descriptive of those who use it for their own business; and may include the name of the place where the business is located or conducted. Mere geographical names are regarded as common property and it is a general rule that such a name cannot usually be appropriated as the subject of an exclusive trade mark, or trade name, especially when the article to which it is applied is the product of the place designated. Such names, by reason of their nature, cannot be indicative of personal origin or ownership of the articles of trade to which they may be applied. They point only to the place of production, not to the producer, and could they be appropriated exclusively the appropriation would result in mischievous monopolies. Therefore, all persons living in a town or city may use its name as an address; and many persons may make the same article in the same town, and show that it is so manufactured, by having the name of the place stamped on it, or printed on the label or covering, as their address or place of business. Care must be taken not to attempt to represent it as the same article as that produced by another user of the name. In order, however, to constitute a name a geographical one within the meaning of this rule it must be in common use as indicative of a certain place, to the extent that the public generally will connect the name with such place, rather than as indicative of any article or product to which it is sought to be applied.

The general rule as to the use of geographical names is subject to the exception that where such a name has been so used in connection with a certain line of business as to indicate not only the place of manufacture or production, but the name of the manufacturer or producer and the excellence of the thing made, then it has acquired such secondary significance or meaning as will entitle the one who

has used it to protection against its use by others in such a manner as will mislead buyers as to the actual origin or quality of the thing produced or sold, or enable such other persons to palm off their goods as the goods of the prior user. 26 R. C. L. pp. 858, 859.

Geographic names often acquire a secondary signification indicative not only of the place of manufacture but of the name of the manufacturer or producer, and the excellence of the thing manufactured or produced, which enables the manufacturer or owner to assert an exclusive right to such name as against every one not doing business within the same geographical limits; and even as against them, if the name be used fraudulently for the purpose of misleading buyers as to the actual origin of the thing produced or palming off the productions of one person as those of another. French Republic v. Sarasota Vichy Springs Co., 191 U. S. 427, 24 Sup. Ct. Rep. 145; El Modello Cigar Manuf'g. Co. v. Gato, 25 Fla. 886, 7 South. Rep. 23; Lawrence Manuf'g. Co. v. Tennessee Manufacturing Co., 138 U. S. 537, 11 Sup. Ct. Rep. 396; Hopkins on Trademarks, p. 83.

In this case the complainant and the defendant both use in their business in Tampa the same trade name, viz: "Tampa Mattress Factory." It is not alleged that the complainant had established a reputation for excellence in producing a particular class of goods which he sells to the public as goods made by him under the stated trade name; and that the defendant by using the same trade name is practicing an imposition upon the public and injuring the complainant by producing and selling under the name used by complainant, goods of a similar character but inferior in quality as and for goods produced by the complainant.

The demurrer was properly sustained and the complainant not desiring to amend, a dismissal of the bill followed.

Affirmed.

TERRELL AND BUFORD, J. J., concur.

BROWN, C. J., AND ELLIS AND STRUM, J. J., concur in the opinion.